ELLSWORTH, MOODY & BENNION
KEEN L. ELLSWORTH, ESQ.
Nevada State Bar #4981
CHARLES W. BENNION, ESQ.
Nevada State Bar #5582
ANDREW D. SMITH, ESQ.
Nevada State Bar #8890
7881 W. Charleston Blvd., Ste. 210
Las Vegas, Nevada 89117
(702) 658-6100
*Attorneys for Plaintiff*
*Tom Collins*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * * * *

| | |
|---|---|
| TOM COLLINS, individually and as County Commissioner of Clark County, Nevada,<br><br>Plaintiff,<br><br>vs.<br><br>FISHER SAND & GRAVEL CO., a North Dakota corporation; LAS VEGAS PAVING CORPORATION, a Nevada corporation; and CLARK COUNTY NEVADA, a political subdivision of the State of Nevada,<br><br>Defendants. | CASE: 2:09-cv-01931-RCJ-LRL<br><br><br>**PLAINTIFF TOM COLLINS' REPLY BRIEF IN SUPPORT OF THIS COURT'S JURISDICTION and OPPOSITION TO MOTION TO DISMISS** |

COMES NOW the Plaintiff, TOM COLLINS, by and through his counsel of record, of the law firm ELLSWORTH, MOODY & BENNION, CHTD., and hereby submits this brief on the issue of this Court's jurisdiction to hear and grant relief on the causes of action plead in Plaintiff's complaint.

I.    **THE COURT FOUND JURISDICTION IN *FISHER I*. IT LOGICALLY AND LEGALLY FOLLOWS IT MUST HAVE JURISDICTION OVER *FISHER II*.**

/ / /

/ / /

**A. If the Court had Subject Matter Jurisdiction in Fisher I, it Follows that the Court Has Subject Matter Jurisdiction in Fisher II.**

In *Fisher I*, both Las Vegas Paving and Clark County presented arguments against subject matter jurisdiction which were virtually identical to the arguments submitted in this case.

The position of both Defendants in *Fisher I* was that Fisher Sand and Gravel did not have a protectable property or liberty interest under the 14th Amendment of the U.S. Constitution, nor under the U.S. Supreme Court's analysis of property rights in *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972). They argued that under *Roth*, protectable property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure..." such an interest. *Roth*, 408 U.S. at 8.

The County further elaborated, citing to *Wedges/Ledges of Cal. v. City of Phoenix*, 24 F.3d 56 (9th Cir. 1994), "A reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms." Id. at 62. They also cited Supreme Court authority reiterating this very proposition. See *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 760 (2005)(property interests arise only when the relevant state law provisions truly make the conferral of the benefit mandatory).

The County clearly delineated that under Nevada law, no property right exists in bidding contracts as "[i]t is well settled in public contract award procedure that a Board's determination of a bidder's 'responsibleness' is discretionary" and "is a factual question involving various considerations evaluated conjunctively." *Faust v. Donrey Media Group*, 95 Nev. 235, 237 (1979). They further argued that discretion afforded by statute was not so limited as to create a property interest in a public contract. See e.g. *Ferencz v. Hairston*, 119 F.3d 1244, 1247-48 (6th Cir. 1997)(the city's discretion in determining the 'best bid' provided sufficient grounds for finding no property interest to remain on

a bid list).

While the Court's basis for maintaining jurisdiction over Fisher Sand and Gravel's claims in *Fisher I* is unclear, if the Court found jurisdiction on the basis that Fisher Sand and Gravel had a protected property interest in a prospective public contract sufficient to enter a writ against Commissioner Collins, then certainly under the same analysis the Court has jurisdiction over the deprivation of Tom Collins' statutorily mandated rights and duties as an elected official.

Unlike in the bidding process for public projects where commissioners have discretion as to what constitutes the lowest 'responsible' bidder, absolutely no government official possesses lawful discretion to compromise Tom Collins' vote without his consent, absent a finding of wrongdoing, followed by strict adherence to statutory procedure. Not even Tom Collins can lawfully abstain from voting without first disclosing any potential conflicts of interest and subjecting them to scrutiny for materiality. N.R.S. 281A.420(4) (public officials must disclose potential conflicts and seek statutorily mandated advisory opinions from Ethics Commission before they decided to abstain; *Nevada Commission on Ethics Opinion 99-56 (Woodbury)*(ruling that N.R.S. 281A.420 establishes the disclosure, participation, and voting standards of public officers in Nevada). In order to lawfully compromise Tom Collins' vote, the County must follow statutorily mandated procedures. See e.g. N.R.S. 283.140 (impeachment procedure); N.R.S. 283.300 (accusation and trial); N.R.S. 306 (recall procedure); N.R.S. 281A.420 (third-party complaints). The County failed to follow any of these procedures.

Therefore, because the County has no lawful discretion to compromise Tom Collins' vote, and Tom Collins has state-law-created rights and duties, one of the most fundamental being his right and duty to vote, this Court should find Tom Collins has a constitutionally protected property interest.

/ / /

3

1

**B. Ancillary and Pendant Jurisdiction**

2      *Fisher I* is already before this Court. The claims and issues in the present case,

3  *Fisher II*, arise directly from the litigants' behavior, and this Court's resulting order, in

4  *Fisher I*. In fact, the two cases are so intertwined that it appears difficult to hold a

5  hearing on one without openly discussing the other.[1] Therefore this Court has ancillary

6  jurisdiction pursuant to  *Ortman v. Stanray Corp.*, 371 F.2d 154, 157 (7th Cir. 1967).

7      The two cases arise from "the same nucleus of operative facts," and therefore, this

8  Court has pendant jurisdiction pursuant to *Valerio v. Boise Cascade Corp.*, 645 F.2d

9  699, 700 (9th Cir. 1981).

10     It would be manifestly unfair and inequitable for this Court to *accept* jurisdiction

11  in *Fisher I*,[2] and issue a writ of mandamus preventing Commissioner Collins from voting

12  on the Bid, and to then *refuse* jurisdiction in *Fisher II*, thereby denying Collins the

13  opportunity to challenge the writ which the parties negotiated without his knowledge or

14  consent. This result seems illogical, incongruous, and unjust.

15     Pendant and ancillary jurisdiction are not materially disputed, and this Court

16  should accept jurisdiction on those grounds, if on no others. However, other compelling

17  grounds for subject-matter jurisdiction *do* exist.

18  **II.    STATE LAW GIVES COMMISSIONER COLLINS A PROPERTY RIGHT**

19  _____

20      [1]*See* Minute Order (Docket #71) in **Fisher I**, Case 2:09-cv-1372, which reads,
in relevant part, "MINUTES OF PROCEEDINGS - Status Conference held on
21  10/26/2009 before Judge Robert C. Jones. . . . The Court hears representations of
counsel as to status. ***Discussion is held with respect to the motion pending***
22  ***in case no. 2:09-cv-1931-RCJ-LRL for protective order regarding the***
***deposition of Tom Collins. The Court advises that it intends to deny the***
23  ***motion.*** Based on representations of counsel, however, the Court encourages
24  plaintiff to postpone the deposition. Status conference adjourns. . . . (Entered:
10/28/2009)." (*Emphasis added.*)
25

26      [2]The issue of jurisdiction was raised and extensively briefed in *Fisher I*, as
noted above.  However no order was filed issued regarding that motion.  Given that
27  the Court eventually issued a writ of mandamus, it appears the Court found it had
jurisdiction in *Fisher I*.
28

## A. State Law Defines the Protected Property Right

Nevada state law creates, and defines the dimensions of, Commissioner Collins' interest in his office. NRS 244.016 creates the Board and the seven Commissioner districts within it. Minimum qualifications are set forth in NRS 244.020. Section 244.030 creates a four-year term, while NRS 244.035 requires an elected Commissioner to take the oath of office or else forfeit the seat. The powers of the elected Commissioners are set forth in NRS 244.150 *et. seq.*

Commissioner Collins explained, in his opening brief on jurisdiction, the state-law processes that a County Commissioner must go through to recuse himself from voting;[3] the state-law processes that anyone must follow to disqualify a Commissioner from voting;[4] the role and state statutory jurisdiction of the Nevada Ethics Commission in disqualifying a County Commissioner from a vote;[5] the state-law basis for recall,[6] removal for misconduct,[7] and impeachment;[8] and the state-law basis for resignation.[9]

These statutes and processes were cited to show the state-law creation and boundaries of Collins' interest in the office of County Commissioner.

> "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth* at 577.

Nevada law creates the office, defines who can hold it, and it defines how and



---

[3]NRS Chapter 281A.

[4]NRS Chapter 281A.

[5]NRS Chapter 281A.

[6]NRS Chapter 306.

[7]NRS Chapter 283.

[8]NRS Chapter 283.

[9]NRS Chapter 283.

1  when the office holder can be removed. This perfectly fits the *Roth* definition of a state-

2  law property interest. This Court must find that Tom Collins has a right to the office

3  during his term, subject to state-law provisions for recusal, disqualification, and removal

4  from office.

5  **B. This Court Must Distinguish Cases Dealing With Candidacy,**

6  **Redistricting, and a Sitting Official in an Unmodified Term**

7  Numerous cases have been cited on he issue of whether someone has a right to

8  elected office. Generally, they fall into three broad categories: those dealing with

9  candidacy for office, those dealing with redistricting or the elimination of an office which

10 ends someone's term in office, and those dealing with a sitting official whose office

11 remains unchanged. The first two types of cases are factually quite distinct from the

12 present case, inasmuch as in the present case, state law applied to these facts creates the

13 property right. *See Roth* at 577.

14 **1. Candidacy**

15 "There is no constitutional right to be elected to a particular office." *Parks v. City*

16 *of Horseshoe Bend, Arkansas*, 480 F.3d 837, 840 (8th Cir. 2007).



17 Cases such as *Taylor v. Beckham*, 178 U.S. 548, 20 S.Ct. 1009 (1900), and

18 *Snowden v. Hughes*, 321 U.S. 1, 64 S.Ct. 397 (1944), dealt with candidates for office

19 jostling to be declared the winners of their elections. ***In that context***, the Supreme

20 Court stated that, "an unlawful denial by state action of a right to state political office is

21 not a denial of a right of property or of liberty secured by the due process clause."

22 *Snowden* at 7.

23 The Courts in *Taylor* and *Snowden* clearly wanted to let voters decide elections.

24 They did not permit losing candidates to use the 14th Amendment's due process clause

25 as a tool to substitute the court's judgment for that of the voters.[10] The *Taylor* court, for

26 _____

27 [10]These principles are interesting given the plaintiff's plea for relief in *Fisher I*.

28 The *Fisher I* plaintiff seeks to have the court award it the Bid instead of Las Vegas

6

1   example, recognized that *some harm* would occur if the voters' choice were deprived of

2   office under state law:

> 3   "It cannot be doubted that **the certificate [of election] awarded to
> 4   Taylor established at least his prima facie <u>right</u> to the
>     governorship**, and that he could not be deprived of that right except
> 5   upon a contest in the mode prescribed by law, and upon proof showing
>     that Goebel was legally entitled to the office. **To deprive him of that
> 6   <u>right</u> illegally was an injury both to him and to the people of
>     the state.** 'The very essence of civil liberty,' it was said in *Marbury v.
> 7   Madison*, 1 Cranch, 137, 2 L. ed. 60, 'is the right of every individual to
>     claim the protection of the laws, whenever he receives an injury.'" *Taylor*
> 8   at 585 (*emphasis added*).

9   The Taylor court ultimately permitted state law to decide the election, which

10  awarded the governorship to Goebel *under due process of state law*. But these early

11  candidacy cases teach us that state law should govern elections, and, once elected, a

12  certificate of election creates at least a *prima facie* right to office.[11]

13  Roth did not directly overrule the holdings of *Taylor* and *Snowden*. But it opened

14  the door for expanded analysis of what constitutes a "property interest." Whereas *Taylor*

15  (decided 1900) and *Snowden* (decided 1944) stated directly that there was no property

16  right [to be elected to] public office, *Roth* (decided 1972) established a test to determine

17  what might constitute a "property right." *See Roth* quote, 5:6-8 *supra*. This test from the

18  more recent Supreme Court case permits Collins to define his interest in his office as a

19  "property right" under state law.

20  The present is factually and legally distinguishable from the candidacy cases, at

21  least to the extent that they held no property rights existed. Commissioner Collins was

22  a mere candidate before the voters of Clark County elected him. He was elected, he

23  received a certificate of election from the state, he took the oath of office, and he was

24  sworn in. No one is arguing that he actually lost the election under state law; rather, the

25  ───────────────────

26  Paving. *See* First Amended Verified Complaint (Docket #14) in Case No. 2:09-cv-
    1372, page 22 lines 4-5 (prayer for relief #2).

27
28  [11]Tom Collins was issued a certificate of election in 2008.

7

Defendants are arguing that he has no right to perform his duties while in office. This position is incorrect. Once elected, state law is extremely clear as to his rights and responsibilities. It is clear enough, in fact, to create a limited property interest, as noted in *Taylor*, which referred to the removal of an elected governor without due process as the deprivation of a right. *Taylor* at 585.

Under *Roth*, Commissioner Collins has a property interest in his office during its term, subject to the state-law procedures for recusal, disqualification, removal, and resignation.

Simply stated, Tom Collins has an interest that is factually more definite and quantifiable than the *Taylor* or *Snowden* plaintiffs.

### 2. Elimination of Office During Term

Another set of cases deal with redistricting, merging offices, and eliminating offices which were created under state law. *See, e.g.*, *Wolf v. Larson*, 897 F.2d 1409, (7th Cir. 1990). In *Wolf*, plaintiff was elected to serve a term as the "village collector." The office was created pursuant to a village ordinance. Midway through her term, the village abolished her position. Wolf sued for deprivation of her property interest without due process. *Id*. at 1410.

State law created the office to which Wolf was elected. If a change in state law eliminated the office before Wolf's term expired, she has little factual basis to complain. The change in state law changes the premise of her right. When the state chooses to redistrict, merge, and/or eliminate certain offices, the very law giving rise to the property interest has changed. The *Roth* holding cannot help a displaced official under these circumstances. State law processes determine whether such changes are permissible. No individual may stop the state from organizing itself as it chooses, subject to applicable statutes and constitutions.

Commissioner Collins is not trying to protect his office from elimination. Commissioner Collins simply seeks to protect his right to do the job he was elected to do,

8

1    so long as he holds the office.

2    ### 3. Sitting Official Whose Office Remains Unchanged

3    This brings us to our third type of case. In these cases, an elected official is sitting

4    in his office, the nature and existence of which remains unchanged. *Gordon v.*

5    *Leatherman*, 450 F. 2d 562 (5th Cir. 1971) and *Crowe v. Lucas*, 595 F.2d 985 (5th Cir.

6    1979) are examples of this. These cases are factually similar to ours. And in these cases,

7    courts have found that the elected official has a property interest in the office, subject to

8    the limitations of state law – such as term of years, term limits, impeachment, etc...

9    The *Gordon* case is especially instructive here, because the facts are conceptually

10    similar. In *Gordon*, the plaintiff was a county commissioner of Dade County, Florida.

11    Gordon sued to challenge the validity of a recall election under state law. *Gordon*. at 563-

12    564. Although the 5th Circuit Court eventually held that the recall election was valid

13    under Florida state law, *Id*. at 567, , it clearly found that the plaintiff had a property

14    interest in his office, subject to state-law limitations:

15    "The district court in granting declaratory and injunctive relief first
16    reasoned that ***plaintiff, as an elected official, 'has a property
    right in his office which cannot be taken away except by due
    process of law.'*** That statement is correct so far as it goes. But it is also
17    true that an official takes his office subject to the conditions imposed by
    the terms and nature of the political system in which he operates. The
18    question then becomes whether there is any constitutional infirmity in
    [the state statue at issue] as comprising part of that system." *Gordon v.*
19    *Leatherman*, 450 F.2d 562, 565 (5th Cir. 1972) (*emphasis added*).

20    Nevada law protects Commissioner Collins to a greater degree, in this situation,

21    than Florida law protected Commissioner Gordon. As we have explained, Commissioner

22    Collins cannot recuse himself without a public evaluation of the materiality of his

23    grounds for recusal, and he cannot be disqualified from voting unless the Ethics

24    Commission's procedures are followed. Neither of these state procedures were followed

25    prior to the writ of mandamus being issued in *Fisher I*.

26    / / /

27    / / /

28

9

**C.    The Defendants Fail to Recognize the Distinction Between Cases involving Rights to Candidacy, Elimination of Office During Term, and Sitting Officials Whose Offices Have Not Changed**

The Defendants have failed to recognize the distinctions between cases involving rights to candidacy, elimination of office mid-term, and sitting officials whose offices have not changed. The resulting effect is that the County has amassed a tremendous soup of string cites to cases where courts allegedly failed to find protected property rights, but Defendants provide little regard to the reasons why. To demonstrate this confusion, the County cites to a plethora of cases which allegedly support their argument against Tom Collins having a property right, yet many of the cases they cite to contradict *Snowden* and *Taylor*, and in some cases, even the County's own parentheticals.

A perfect example of the above is the County's use of *Harris County Commissioners Court v. Moore*, 420 US 564 (1972). In their brief the County said concerning *Harris*, "Despite state procedures for notice and trial, the Court directed the trial court to dismiss the complaint for alleged equal protection and due process violations."



While that sentence alone is true, the reasoning behind the *Harris* court's actions actually demonstrate an inclination toward *Roth*. In *Harris*, the court abstained and dismissed the case without prejudice to preserve the appellant's due process claims on appeal "pending determination of the state law questions that pervade this case." *Id*. at 82.

Explaining their decision to abstain and remand for dismissal without prejudice, the *Harris* Court stated, "In short, not only the character of the federal right in this case, but even the availability of the relief sought turn in large part on the same unsettled state-law questions. Because the federal claim in this case is 'entangled in a skein of state law that must be untangled before the federal case can proceed,' *McNeese v. Board of Education*, 373 U. S. 668, 373 U. S. 674 (1963), we conclude that the District Court erred

10

1  in not adopting appellants' suggestion to abstain."[12] The *Harris* Court did not remand

2  for dismissal because there was no property interest as claimed by the County, but only

3  because questions of state law needed to be resolved before the Court could take

4  jurisdiction over their claims. Not surprisingly, a simple reading of the relevant case law

5  reveals strong factual distinctions between cases which follow *Roth* and those that do

6  not.

7  **III.    COLLINS WAS NOT REQUIRED TO INTERVENE IN *FISHER I*.**

8          It has been argued that Commissioner Collins has waived his rights and objections

9  by not appearing and intervening in *Fisher I*. This is not correct; it was Plaintiff's burden

10  to compel his participation in that case.

11          The United States Supreme Court case of *Martin v. Wilks*, 490 U.S. 755, 109 S.Ct.

12  2180, 104 L.Ed.2d 835 (1988), held:

13      "Joinder as a party, rather than knowledge of a lawsuit and an opportunity
        to intervene, is the method by which potential parties are subjected to the

14      jurisdiction of the court and bound by a judgment or decree.  The parties
        to a lawsuit presumably know better than anyone else the nature and scope

15      of relief sought in the action, and at whose expense such relief might be
        granted. ***It makes sense, therefore, to place on them a burden of***

16      ***bringing in additional parties where such a step is indicated,***
        ***rather than placing on potential additional parties a duty to***

17      ***intervene when they acquire knowledge of the lawsuit.*** *Gladys*
        *Baker* at 553 (e*mphasis added*).

18

19          The Supreme Court has also noted the general consensus, "'in Anglo-American

20  jurisprudence that one is not bound by a judgment in personam in a litigation in which

21  he is not designated as a party or to which he has not been made a party by service of

22  process' . . . This rule is part of our 'deep-rooted historic tradition that everyone should

23  have his day in court.' As a consequence, '[a] judgment or decree among parties to a

24  lawsuit resolves issues among them, but does not conclude the rights of strangers to

25

26 ────────────────

27      [12]Another Case the County cited which turned on questions of state law is *Wolf*
    *v. Larson*, 897 F.2d 1409, 1411-13 (7th Cir. 1990)(due process was not violated because

28  it appeared state constitutionally-mandated procedure was followed);



1  those proceedings." [13]

2       If the plaintiff in *Fisher I* wanted to bind Commissioner Collins to a different set

3  of restrictions than the other county commissioners, it should have made him an

4  individual party to the case. It did not.

5  **IV.    COLLINS HAS A PROTECTED LIBERTY INTEREST IN HIS VOTE**

6       Commissioner Collins has more than a protected property interest in his office

7  and his vote. He also has a liberty interest which is protected by the 14th Amendment

8  against deprivation without due process.

9       In 1989 the First Circuit declared that it is considered unassailable that an elected

10  official's right to vote falls under the first amendment's freedom of speech guarantee:

11      "Although we have found no case directly on point, probably because it is
    considered unassailable, **we have no difficulty in finding that the act**

12      **of voting on public issues by a member of a public agency or**
    **board comes within the freedom of speech guarantee of the first**

13      **amendment**.  This is especially true when the agency members are
    elected officials." *Miller v. Town of Hull*, 878 F.2d 523, 532 (1st

14      Cir.)(emphasis added).

15  That same year, the D.C. Circuit cited *Miller*, reaffirming, "A legislator's vote is

16  inherently expressive.  This so, moreover, not simply because the act of voting requires

17  a verbal utterance." *Clark v. U.S.*, 886 F.2d 404, 411 (D.C. Cir. 1989) *vacated as moot*,

18  915 F.2d 699)(D.C. Cir. 1990).

19       Voting, as the Supreme Court has recognized, is the "individual and collective

20  **expression of opinion** within the legislative process." *Id.* quoting *Hutchison v.*

21  *Proxmire,* 443 U.S. 111, 133, 99 S.Ct. 2675, 2697, 61 L.Ed.2d 411 (1978)(*emphasis added*

22  *by Clarke*).  Voting serves the function not only of mechanically disposing of proposed

23  legislation, but of registering the "will, preference, or choice," of an individual legislator

24  on an issue of concern to the political community. *Clarke at 411,* quoting *Montero v.*

25  *Meyer*, 861 F.2d 603, 607 (10th Cir. 1988)(quoting BLACK'S LAW DICTIONARY 1414

26

27      [13]Richards v. Jefferson County, 517 U.S. 793, 798, 116 S.Ct. 1761, 135 L.Ed.2d 76

28  (1996)(citations omitted).

1  (5th ed. 1979)), cert. denied, 492 U.S. 921, 109 S.Ct. 3249, 106 L.Ed.2d 595 (1989).  For

2  this reason, a legislator's voting record is "the best indication of their position on specific

3  issues and his or her ideological persuasions." *Clarke* quoting M. Barone & G. Ujifusa,

4  THE ALMANAC OF AMERICAN POLITICS 1988 viii (1988).

5      Tom Collins is an elected member of a public board. His vote constitutes free

6  speech in the political arena. Free speech is protected by the 1st Amendment to the U.S.

7  Constitution. Free speech is also a liberty interest which is protected by the 14th

8  Amendment. *See, e.g. Roth* at 575. Therefore the County's action to deny Commissioner

9  Collins from voting on the Bid constitutes the denial of a liberty interest, and thus a

10  violation of his due process rights.

11  **V.      CONCLUSION**

12      For the reasons stated above, Plaintiff Tom Collins requests that this Court find

13  federal question, pendant, and ancillary jurisdiction in this case. The Defendants' motion

14  to dismiss must be denied.

15      DATED this 30th day of October, 2009.

16                          ELLSWORTH, MOODY & BENNION

17

18                          By:    /s/ Andrew D. Smith
                                 Andrew D. Smith, Esq.
19                               Nevada Bar No. 8890
                                 7881 W. Charleston Blvd., Suite 210
20                               Las Vegas, NV 89117
                                 Tel: (702) 658-6100
21                               *Attorneys for the Plaintiff*

22

23

24

25

26

27

28



1

**CERTIFICATE OF SERVICE**

2      I hereby certify that I am over the age of eighteen years and I am an employee of

3    ELLSWORTH, MOODY & BENNION.  On the 30th day of October, 2009, a true and

4    correct copy of the foregoing PLAINTIFF TOM COLLINS' REPLY BRIEF IN SUPPORT

5    OF THIS COURT'S JURISDICTION and OPPOSITION TO MOTION TO DISMISS,

6    Expedited Review Requested, was sent to all interested parties, via CM/ECF electronic

7    transmission, addressed as follows:

8    | | |
     |---|---|
     | Stanley W. Parry, Esq. | Gwen Rutar Mullins, Esq. |
     | BALLARD SPAHR | Wade B. Gochnour, Esq. |
     | 100 City Pkwy., Suite 1750 | HOWARD & HOWARD ATTORNEYS PLLC |
     | Las Vegas, NV 89106-4617 | 3800 Howard Hughes Parkway, Suite 1400 |
     | parrys@ballardspahr.com | Las Vegas, NV 89169 |
     | gradyc@ballardspahr.com | GRM@h2law.com |
     | waltons@ballardspahr.com | gwenm@cox.net |
     | *Attorney for Defendant Fisher Sand &* | kdp@h2law.com |
     | *Gravel* | wbg@h2law.com |
     | | *Attorneys for Defendant Las Vegas* |
     | | *Paving* |
     | J. Colby Williams, Esq. | |
     | CAMPBELL & WILLIAMS | |
     | 700 S. Seventh Street | |
     | Las Vegas, NV 89101 | |
     | jcw@campbellandwilliams.com | |
     | *Attorneys for Defendant Clark County,* | |
     | *Nevada* | |

18

19              _____/s/ Andrew D. Smith_____
                 Employee of ELLSWORTH, MOODY & BENNION

20

21

22

23

24

25

26

27

28